IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WAYNE ALAN WATSON, | § | |
| TDCJ #414565, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-3260 |
| | § | |
| NATHANIEL QUARTERMAN, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

State inmate Wayne Alan Watson (TDCJ #414565) has filed a complaint under 42 U.S.C. § 1983, which purports to seek injunctive relief from an assortment of prison policies. At the Court's request, Watson has provided a more definite statement of his claims. (Doc. # 7). After reviewing all of the pleadings as required by 28 U.S.C. § 1915A, the Court authorized service of process and requested an answer from the defendants, who are allegedly responsible for making and enforcing the policies at issue. The defendants have filed a motion for summary judgment, arguing that Watson is not entitled to the relief that he seeks. (Doc. # 30). Watson has filed a reply. (Doc. # 32). After considering all of the pleadings, the summary judgment evidence, and the applicable law, the Court grants the defendants' motion and dismisses this case for reasons set forth below.

## I.    BACKGROUND

Watson is currently in custody of the Texas Department of Criminal Justice - Correctional Institutions Division (collectively, "TDCJ") as the result of several felony

convictions for robbery, aggravated robbery, and aggravated assault in 1985 and 1986.[1] Watson reports that, following his admission to TDCJ in 1986, he was placed in protective custody in January of 1987, after he provided information to prison officials about "illegal drug operations" by a prison gang (the Texas Syndicate) at the Ramsey One Unit. As a result, Watson states that his name was placed on a Texas Syndicate "hit list." Because of the threats made against his life, Watson has been in protective custody since that time.

Watson has filed this civil rights lawsuit under 42 U.S.C. § 1983, against Nathaniel Quarterman in his capacity as Director of TDCJ. Watson claims that, as chief policymaker for TDCJ, Quarterman is responsible for the conditions of his confinement. Watson also sues Charles Williamson, who is Warden of the Goree Unit in Huntsville, Texas, where Watson has resided since 1993. Watson's lawsuit challenges the conditions of his confinement in protective custody at the Goree Unit and the restrictive policies imposed by TDCJ.

Watson complains that the conditions of confinement in protective custody are more restrictive than the conditions placed on inmates housed in general population. As a result

---

[1]    Watson discloses that he has numerous convictions. (Doc. # 7). Public records confirm that Watson has five convictions for robbery by threat from Tarrant County (cause numbers 0260277D, 261457D, 260205D, 206192D, 260191D). He received a prison sentence of five years in each of those cases. Watson has one conviction for aggravated robbery with a deadly weapon from Tarrant County (cause number 0260190D) for which he received a ninety-nine year prison sentence. Watson was convicted of two counts of aggravated robbery in McLennan County (cause number 85562C), where he received a fifteen-year prison sentence. Watson also has a conviction for aggravated assault from McClennan County (cause number 86522), for which he received a prison sentence of just under thirty-five years (thirty-four years, eleven months, and thirty days). *See* Texas Department of Criminal Justice, Offender Information, at www.tdcj.state.us.tx (last visited February 12, 2008).

of these restrictions, Watson complains that his constitutional rights have been violated in the following manner:  (1) he has been denied "legal visits" with other inmates and, therefore, denied his right to access the courts;[2]  (2) he has been denied access to adequate medical care for a hearing impairment since November of 2005 because the transportation policy is unsafe; and (3) he has been denied routine mental health screening that is exempt from the $3.00 co-payment that prisoners are required to pay.  In addition to these specific claims, Watson complains generally that, in comparison to inmates housed in the general population, inmates assigned to protective custody do not have sufficient access to a variety of privileges featured at the prison.  Arguing that prison officials have violated his right to equal protection along with the prohibition against cruel and unusual punishment found in the Eighth Amendment to the United States Constitution, Watson seeks injunctive relief in the form of changes in TDCJ policy concerning the privileges extended to inmates in protective custody.

The defendants have filed a motion for summary judgment, arguing that Watson has failed to demonstrate a constitutional violation or to show that he is entitled to injunctive relief.[3]  In support, the defendants have provided portions of Watson's medical records,

---

[2]    Watson blames Goree Unit Law Library Supervisor Brian Williams for denying him a legal visit with another inmate and he accuses Williams of impeding his access to courts. Although Williams is listed as a defendant, the Court did not request an answer from Williams because, for reasons discussed further below, Watson's allegations against him fail to state a claim upon which relief can be granted for purposes of 28 U.S.C. §1915(e)(2)(B).

[3]    The defendants argue, alternatively, that they are entitled to qualified immunity from Watson's claims.  Watson does not seek monetary damages in this case and, because he
(continued...)

grievance records, classification records, an affidavit from Warden Williamson,[4] and the

policy manual regarding educational and instructional programs for inmates incarcerated in

TDCJ.  (Docs. # 30, #31, #33).  Watson, who has provided an affidavit of his own along with

sworn statements from other inmates confined to protective custody, insists that he is entitled

to an injunction.  (Docs. # 32).  The parties' contentions are addressed below under the

governing standard of review.

## II.   <u>STANDARD OF REVIEW</u>

### A.   **The Prison Litigation Reform Act**

The complaint in this case is governed by the Prison Litigation Reform Act (the

"PLRA"), which mandates the dismissal of a prisoner's civil rights complaint under the

following circumstances.  Upon initial screening of a prisoner civil rights complaint, the

PLRA requires a district court to scrutinize the claims and dismiss the complaint, in whole

or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim

---

[3](...continued)

seeks injunctive relief from policies promulgated by Quarterman in his official capacity, Watson does not appear to sue the defendants in their personal capacity.  In any event, "[n]either absolute nor qualified personal immunity extends to suits for injunctive or declaratory relief under § 1983." *Chrissy F. by Medley v. Mississippi Dep't of Public Welfare*, 925 F.2d 844, 849 (5th Cir. 1991) (citations omitted); *see also Williams v. Ballard*, 466 F.3d 330, 334 n.7 (5th Cir. 2006) ("Qualified immunity does not protect officials from injunctive relief.") (citing *Orellana v. Kyle*, 65 F.3d 29, 33 (5th Cir. 1995)).  Because Watson seeks only injunctive relief from official TDCJ policies, the Court does not address the defendants' argument concerning the defense of qualified immunity.

[4]      The affidavit from Williamson that is attached to the summary judgment motion is unsigned. The defendants have filed a motion to supplement the record with a signed affidavit.  (Doc. # 31).  That motion is granted.

upon which relief may be granted;" or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). A reviewing court may dismiss a complaint for these same reasons "at any time" where a party proceeds *in forma pauperis*. 28 U.S.C. § 1915(e)(2)(B) (mandating dismissal where the complaint is "frivolous or malicious," "fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief"). The PLRA also provides that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." 42 U.S.C. § 1997e(c).

"A district court may dismiss as frivolous the complaint of a prisoner proceeding IFP if it lacks an arguable basis in law or fact." *Geiger v Jowers*, 404 F.3d 371, 373 (5th Cir. 2005). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). A review for failure to state a claim is governed by the same standard used to review a dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Newsome v. EEOC*, 301 F.3d 227, 231 (5th Cir.) (citing *Moore v. Carwell*, 168 F.3d 234, 236 (5th Cir. 1999) (citation omitted)), *cert. denied*, 537 U.S. 1049 (2002). Under this standard, "[t]he complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).

5

Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, — U.S. —, 127 S. Ct. 1955, 1964-65 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  A complaint must be dismissed for failure to state a claim if the plaintiff fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974.  Of course, "[a] document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, — U.S. —, 127 S. Ct. 2197, 2200 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

### B.    Summary Judgment

The defendants have filed a motion for summary judgment, arguing that the plaintiff's claims fail as a matter of law.  Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.  Under Rule 56, a court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The moving party bears the burden to show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Capitol Indem. Corp. v. United States*, 452 F.3d 428, 430 (5th Cir. 2006).

6

Once the moving party meets its initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmovant cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). To survive summary judgment, the nonmovant must submit or identify evidence in the record to show the existence of a genuine issue of material fact as to each element of the cause of action. *See Malacara v. Garber*, 353 F.3d 393, 404 (5th Cir. 2003) (citation omitted). Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact can exist. *Celotex*, 477 U.S. at 322-23; *Whiting v. University of Southern Miss.*, 451 F.3d 339, 345 (5th Cir. 2006).

The nonmovant's burden is not met by mere reliance on the allegations or denials in the nonmovant's pleadings. *See Morris v. Covan Worldwide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998); *see also Johnston v. City of Houston*, 14 F.3d 1056, 1060 (5th Cir. 1994) ("Unsworn pleadings, memoranda or the like are not, of course, competent summary judgment evidence."). Likewise, the nonmoving party "cannot satisfy this burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 860 (5th Cir. 2004) (citations omitted). In the absence of proof, a reviewing court will not assume that the nonmovant could or would prove

the necessary facts.  *See McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d

89, 92 (5th Cir. 1995), *revised on other grounds upon denial of reh'g*, 70 F.3d 26 (5th Cir.

1995).  Although the plaintiff proceeds *pro se*, "the notice afforded by the Rules of Civil

Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his

burden in opposing a summary judgment motion.  *Martin v. Harrison County Jail*, 975 F.2d

192, 193 (5th Cir. 1992); *see also Ogbodiegwu v. Wackenhut Corrections Corp.*, 202 F.3d

265 (5th Cir. 1999) (unpublished table opinion) ("Although the pleadings filed by *pro se*

parties are held to 'less stringent standards than formal pleadings drafted by lawyers,' *pro

se* parties must still comply with the rules of procedure and make arguments capable of

withstanding summary judgment.").

### C.    Injunctive Relief

Watson, who alleges that the conditions of his confinement have violated his

constitutional rights, does not seek monetary damages.  Instead, he seeks an injunction

against the prospective application of the restrictive prison policies that apply to protective

custody inmates in TDCJ.  To obtain a preliminary injunction, the applicant must show (1)

a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will

suffer irreparable injury if the injunction is not granted, (3) that his threatened injury

outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting

the preliminary injunction will not disserve the public interest.  *See Planned Parenthood of

Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005).  For a permanent

injunction to issue the plaintiff must prevail on the merits of his claim and establish that

equitable relief is appropriate in all other respects.  *See Dresser-Rand Co. v. Virtual Automation Inc*., 361 F.3d 831, 847 (5th Cir. 2004) (citing *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n. 12 (1987) (recognizing that the standard for a permanent injunction is essentially the same as for a preliminary injunction with the exception that the plaintiff must show actual success on the merits rather than a mere likelihood of success)). Injunctive relief in the form of "superintending federal injunctive decrees directing state officials" is an extraordinary remedy. *Morrow v. Harwell*, 768 F.2d 619, 627 (5th Cir. 1985). Emphasizing its extraordinary character, the Fifth Circuit has cautioned that an injunction "should not be granted unless the party seeking it has 'clearly carried the burden of persuasion' on all four requirements." *PCI Transportation Inc. v. Fort Worth & Western Railroad Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (citations omitted).

Because this case concerns prison conditions, the Prison Litigation Reform Act (the "PLRA") imposes additional restrictions on the authority to grant an injunction.  The PLRA provides that "[p]rospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs."  18 U.S.C. § 3626(a)(1).  In particular, the PLRA prohibits an order granting prospective relief or a preliminary injunction unless the court first finds that such relief is:  (1) narrowly drawn; (2) extends no further than necessary to correct the harm; and (3) is the least intrusive means necessary to correct that harm. *See* 18 U.S.C. §§ 3626(a)(1)(A), 3626(a)(2).  In considering a prisoner's request for prospective relief, the reviewing court "shall give substantial weight to any adverse impact on public safety or the

operation of a criminal justice system" caused by the relief and shall respect the certain principles of comity where state or local law is concerned. *See* 18 U.S.C. §§ 3626(a)(1)(B), 3626(a)(2).

In this instance, Watson fails to meet his burden to persuade the Court that injunctive relief is appropriate under the governing legal standard or the restrictions found in the PLRA. Watson's failure to carry his burden is fatal to his claims. *See PCI Transportation Inc.*, 418 F.3d at 545; *see also Stallworth v. Greer*, 227 Fed. App'x 415, 2007 WL 1454481 (5th Cir. 2007) (affirming the dismissal of a prisoner's complaint for global injunctive relief from retaliation by prison officials where the prisoner failed to carry his burden of persuasion). Nevertheless, Watson's claims are discussed further below following a brief overview about protective custody and the obligation of prison officials for safekeeping prisoners from threats of harm.

## III.    DISCUSSION

### A.    Protective Custody and the Duty to Protect Prisoners from Harm

Watson's complaint seeks injunctive relief from the application of a variety of policies that affect the conditions of his confinement in the protective custody wing of the Goree Unit.  According to the pleadings and the record, TDCJ has a different levels of custodial classification, depending on safety and security needs.  While most TDCJ inmates are housed in the "general population," those who violate prison disciplinary rules or pose a threat to the physical safety of others or the order and security of the institution may be placed in

"administrative segregation." Other inmates may be confined to administrative segregation because of their status as active members of a Security Threat Group ("STG") or prison gang.

While certain inmates are confined to administrative segregation to keep the general population and prison personnel safe from harm, other inmates in need of safekeeping from threat of harm by others may be segregated from all inmates in "protective custody." Watson is among those inmates who have been assigned by the prison classification committee to protective custody for their safety. It is undisputed that inmates assigned to protective custody do not enjoy the same level of freedom from restriction as those housed in general population. Warden Williamson explains that, although inmates in protective custody are segregated from the general population, "[p]rotective custody is different from administrative segregation" because "it is not punitive." Williamson Affidavit, Doc. # 31. Inmates in protective custody are there for their safety because "they are in danger and have requested protection." *Id.* "Because of the risk to the inmates, they are not assigned to single cells, segregated as much as possible from other inmates, and cannot interact with the general population." *Id.* According to Warden Williamson, inmates who want to leave protective custody and return to general population "may request a review of their custody status." *Id.* Williamson notes, however, that Watson was removed from general population "for his protection" from Texas Syndicate gang members, who have put his name on a hit list. *Id.*

The Texas Syndicate is recognized as one of at least five major prison gangs in this country, along with the Aryan Brotherhood, the Black Guerrilla Family, the Mexican Mafia, and La Nuestra Familia. *See Johnson v. California*, 543 U.S. 499, 533 (2005) (discussing

the real dangers posed by prison gangs).  Prison gangs present a serious threat to institutional security, and correctional officials have the authority and the responsibility to eliminate their presence from the prisons.  *See, e.g., Lewis v. Richards*, 107 F.3d 549, 554 (7th Cir. 1997) (discussing gang-related threats to institutional security and safety, and observing that unchecked "violence in a prison may create unconstitutional conditions of confinement"); *Madrid v. Gomez*, 889 F. Supp. 1146, 1240-41, 1278 (N.D. Cal. 1995) (outlining evidence showing that gang members and associates are threats to prison security, and that inmates who join such gangs join "for life"); Ira J. Silverman, *Corrections: A Comprehensive View* ch. 12 (2d ed. 2001) (detailing the problems posed by security threat groups and prison gangs, including the Texas Syndicate).  Because the gang poses a threat to prison security, the Texas Syndicate is recognized as a Security Threat Group by TDCJ and its members may be assigned to administrative segregation.  *See, e.g., Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1996) (upholding a decision by TDCJ to place an inmate in administrative segregation because of his membership in the Texas Syndicate prison gang).  The Court takes judicial notice that the Texas Syndicate has been accused of orchestrating murders, attempted murders, and other offenses, within the Southern District of Texas.  *See United States v. Nuncio, et al.*, Crim. No. H-07-0037 (S.D. Tex.) (*Indictment*, Doc. # 1);  *United States v. Lopez, et al.*, Crim. No. H-01-121 (S.D. Tex.) (*Superseding Indictment*, Doc. # 134).

Watson discloses that his custodial classification is reviewed by prison officials every 180 days.  Plaintiff's More Definite Statement, Doc. # 7, at ¶ 3(c).  Because of the threats against his life by members of the Texas Syndicate, prison officials have declined to release

Watson from protective custody into the general population.  *Id*. at ¶ 3(d).  The record reflects that Watson has had regular review by a classification committee, which has consistently found that he "needs protection" because his name is on a hit list.  Summary Judgment Motion, Doc. # 30, Exhibit C, Classification Records.

Watson does not challenge his assignment to protective custody or any particular decision by classification officials to continue his custodial status based on the need to keep him safe from threats of harm; nor does he seek his release to general population.[5]  Watson complains that, as a result of the restrictive policies imposed on inmates confined to protective custody, he has been denied access to courts, adequate medical care, mental health evaluations free of charge, as well as reduced access to other privileges enjoyed by prisoners in the general population.  Watson seeks injunctive relief against future or prospective application of the prison policies that he challenges.

Before considering Watson's allegations, the Court pauses to note that an inmate's placement in protective custody implicates the duty imposed on prison officials under the Eighth Amendment to the United States Constitution to maintain institutional security and to keep prisoners safe from conditions that pose a substantial risk of serious harm.  *See*

---

[5]     Placement in segregated confinement within a prison, standing alone, is not sufficient to establish a constitutional violation.  *See, e.g., Wilkinson v. Austin*, 545 U.S. 209 (2005) (relating to administrative segregation at a "supermax" facility).  Classification of prisoners is a matter left to the discretion of prison officials. *See McCord v. Maggio*, 910 F.2d 1248, 1250 (5th Cir.1990) (citing *Wilkerson v. Maggio*, 703 F.2d 909 (5th Cir. 1983)).  "It is well settled that '[p]rison officials must have broad discretion, free from judicial intervention, in classifying prisoners in terms of their custodial status.'" *McCord*, 910 F.2d at 1251 (citing *Wilkerson*, 703 F.2d at 911; and *McGruder v. Phelps*, 608 F.2d 1023, 1026 (5th Cir. 1979)).  Thus, disagreements or disputes about custodial classification do not state a constitutional claim.  *See Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995).

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *see also Helling v. McKinney*, 509 U.S. 25, 33 (1993) (observing that a prison official's duty under the Eighth Amendment is to ensure "'reasonable safety'").   The Eighth Amendment standard associated with this duty incorporates due regard for prison officials' "unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer*, 511 U.S. at 846 (citations omitted).

The Supreme Court has explained that "[t]he very object of imprisonment is confinement" and, as such, "many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003).  While an inmate is not "stripped of all constitutional protection as he passes through the prison's gates," *Jones v. North Carolina Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137 (1977) (C.J. Burger, concurring); *see also Turner v. Safley*, 482 U.S. 78, 84 (1987) ("Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."),  it is well established that an inmate does not retain rights inconsistent with proper incarceration. *Overton*, 539 U.S. at 131.  As the Supreme Court has repeatedly held, the United States Constitution permits greater restrictions on inmates' rights than it allows elsewhere and affords substantial deference to the professional judgment of prison administrators.  *See Beard v. Banks*, — U.S. —, 126 S. Ct. 2572, 2577-78 (2006) (citing *Overton*, 539 U.S. at 132; *Turner v. Safley*, 482 U.S. 78, 84-85 (1987)).

Deference to prison regulations is required based on the recognition that "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform." *Turner*, 482 U.S. at 84 (citing *Procunier v. Martinez*, 416 U.S. 396, 405 (1974)).

14

As the Supreme Court has acknowledged, "the problems of prisons in America are complex and intractable, and, more to the point, they are not readily susceptible of resolution by decree." *Id.* (quoting *Martinez*, 416 U.S. at 404-05). "Running a prison is an inordinately difficult undertaking that requires expertise, planning, and the commitment of resources, all of which are peculiarly within the province of the legislative and executive branches of government. Prison administration is, moreover, a task that has been committed to the responsibility of those branches, and separation of powers concerns counsel a policy of judicial restraint." *Turner*, 482 U.S. at 85. Further, where a state penal system is involved federal courts have "additional reason to accord deference to the appropriate prison authorities." *Id.* (citing *Martinez*, 416 U.S. at 405).

It is settled that safety and institutional security are legitimate penological interests. *See Washington v. Harper*, 494 U.S. 210, 225 (1990) ("There can be little doubt as to both the legitimacy and the importance of the governmental interest presented here. There are few cases in which the State's interest in combating the danger posed by a person to himself and others is greater than in a prison environment, which, 'by definition,' is made up of persons with 'a demonstrated proclivity for antisocial criminal, and often violent, conduct.'") (quoting *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) (citations omitted)). Accordingly, courts are required to show great deference to prison administrators' adoption and implementation of policies needed to ensure order and security. *See Pell v. Procunier*, 417 U.S. 817, 827 (1974); *see also Oliver v. Scott*, 276 F.3d 736, 745 (5th Cir.2002) (noting that prison administrators' judgments regarding institutional security are accorded "great

deference"). Watson's claims are reviewed under the applicable law and with the requisite deference to prison policies that are in place to protect him from harm.

### B.    Access to Courts

Watson complains that, as a result of his confinement in protective custody, he has been denied "legal visits" with other inmates. Watson alleges that he was denied a legal visit with an inmate on June 28, 2006, and that he has been denied legal visits from other inmates since filing this lawsuit. Watson claims that the policy of denying legal visits to inmates in protective custody has interfered with or denied him the constitutional right to access the courts because he was not allowed to have assistance from other inmates in preparing his pleadings in this case. Watson's claim is without merit.

The constitutional right implicated by Watson's allegations is the right to access the courts that is generally protected by the First Amendment, the Due Process Clause, and the Equal Protection Clause. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002) (collecting cases that demonstrate the "unsettled . . . basis of the constitutional right of access to courts"). Prisoners clearly have a constitutionally protected right of access to the courts. *See Lewis v. Casey*, 518 U.S. 343, 360 (1996) (citing *Bounds v. Smith*, 430 U.S. 817 (1977)). However, the right of access for prisoners is not unlimited. *See Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999) (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997)). The right encompasses only a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement. *See Jones*, 188 F.3d at 325 (citing *Lewis*, 518 U.S. at 351). In that regard,

inmates are "not guarantee[d] the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims." *Lewis*, 518 U.S. at 355.  Instead, they are guaranteed "the conferral of a capability — the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." *Id*.

In this instance, Watson alleges that the defendants have interfered with his right to access the courts by denying him legal assistance from other prisoners.  The Supreme Court has held that there is no constitutional right to have legal assistance from another inmate in prison.  *See Shaw v. Murphy*, 532 U.S. 223, 231 n.3 (2001) (noting that prisoners do not have "a freestanding right" to give or receive legal advice);  *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996) ("Prisoners have no right to a particular prisoner's help in legal matters as long as the putative recipient's constitutional right of access to the courts is not infringed.").  Moreover, Watson's allegations fail to establish that a policy of denying legal visits with other inmates has resulted in the denial of access to courts.  To establish a denial of access to the courts, a prisoner must demonstrate "actual injury." *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (citing *Lewis*, 518 U.S. at 351-54);  *see also Ruiz v. United States*, 160 F.3d 273, 275 (5th Cir. 1998).  In other words, to prevail, Watson must establish that "his position as a litigant was prejudiced by his denial of access to the courts."  *McDonald v. Stewart*, 132 F.3d 225, 231  (5th Cir. 1998).

Watson claims that he was denied legal visits from other inmates while he was preparing pleadings for filing the complaint in this case.  Watson does not allege or show that

his position as a litigant has been prejudiced in this case as the result of any alleged policy that precludes inmates from assisting others.  The record confirms that his pleadings are articulate, neatly typed, and carefully documented with numerous exhibits.  Watson has met court deadlines without difficulty and he does not demonstrate that he has been harmed by any delay caused by the defendants.  More importantly, Watson does not demonstrate that he has been denied the right to bring a non-frivolous claim concerning his underlying convictions, his sentence, or the conditions of his confinement.[6]  Based on this record, Watson fails to demonstrate a valid claim for denial of access to courts and he further fails to show that he is entitled to injunctive relief from the alleged policy at issue.  Accordingly, Watson's allegation that he has been denied access to courts is frivolous and must be dismissed.

### C.    Medical Care

---

[6]    Watson presents affidavits from three other inmates confined to protective custody, including Robert Turner, Adrian Martinez, and Harold Mitchell.  (Exhibits, Doc. # 32). Watson appears to argue that he has been prejudiced because, if these inmates had been allowed to visit with him and to join this lawsuit as co-plaintiffs, these individuals would have shared the cost of the filing fee.  Watson is mistaken.  Each plaintiff would have been assessed a filing fee pursuant to the PLRA, 28 U.S.C. § 1915.  *See Hubbard v. Haley*, 262 F.3d 1194 (11th Cir. 2001) (refusing to allow the joinder of multiple plaintiffs attempting to circumvent the PLRA's unambiguous requirement that each prisoner be required to pay the full amount of the filing fee), *cert. denied*, 534 U.S. 1136 (2002); *Patton v. Jefferson Correctional Center*, 136 F.3d 458, 464 (5th Cir. 1998) (discouraging "creative joinder of actions" by prisoners attempting to circumvent the PLRA's three-strikes provision).

Watson, who is reportedly deaf in his right ear, alleges further that he was denied adequate medical care as a result of the prison transportation policy.  Watson explains that he was scheduled for an examination with the UTMB audiology clinic on November 10, 2005.  While awaiting his appointment at the Estelle Unit on November 9, 2005, Watson claims that he was housed with "active gang members whose gang has put a contract on the Plaintiff's life."  Watson was not seen by the audiology clinic and was returned to the Goree Unit on November 14, 2005, without receiving the scheduled examination.   Watson complains that, during his transportation back to his unit, he was seated directly beside an active gang member "in violation of agency policy."  Watson complains that the manner in which he was transported placed him at risk of death in order to receive medical care. Because he is reluctant to seek further medical treatment for his hearing impairment under these conditions, Watson claims that the transportation policy violates his right to receive adequate medical care.

To prevail under 42 U.S.C. § 1983, Watson must demonstrate that he was denied adequate medical care in violation of the Eighth Amendment to the United States Constitution.  "Although the Eighth Amendment 'does not, by its precise words, mandate a certain level of medical care for prisoners[,]' the Supreme Court has interpreted it as imposing a duty on prison officials to 'ensure that inmates receive adequate  . . . medical care.'" *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).  "A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when his conduct demonstrates deliberate indifference

19

to a prisoner's serious medical needs, constituting an 'unnecessary and wanton infliction of pain.'" *Easter*, 467 F.3d at 463 (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (quoting *Estelle v. Gamble*, 429 U.S. 97 (1976)).

The Eighth Amendment deliberate-indifference standard has both an objective and subjective component. *See Farmer*, 511 U.S. at 834. To establish deliberate indifference under this standard, the prisoner must show that the defendants were both (1) aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn, and (2) that they actually drew an inference that such potential for harm existed. *See id.* at 837; *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). The Fifth Circuit has stated that the deliberate-indifference standard is an "extremely high" one to meet. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "A prison official acts with deliberate indifference 'only if [(A)] he knows that inmates face a substantial risk of serious bodily harm and [(B)] he disregards that risk by failing to take reasonable measures to abate it.'" *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quoting *Farmer*, 511 U.S. at 847). "Unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Id.* (citations omitted). A showing of deliberate indifference requires the prisoner to submit evidence that prison officials "'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Id.* (citations omitted).

Exhibits presented by the defendants reflect that Watson refused his medical appointment in November of 2005, because he felt unsafe.  *See* Summary Judgment Motion, Doc. # 30, Exhibit A, Refusal of Treatment or Services. Watson does not demonstrate that he was denied access to care in November of 2005, or that prison officials refused to treat him on that occasion.  Watson complains, nevertheless, that he was denied care because he was transported in the company of a gang member in violation of the TDCJ transportation policy, which is apparently designed to avoid placing protective custody inmates in close proximity with known gang members and others assigned to administrative segregation.  To protect him from the potential risk of harm, Watson asks this Court to enter an injunction requiring prison officials to transport him and other protective custody prisoners in a van individually to future medical appointments.

In response to Watson's allegation, Warden Williamson explains that prisoners who are assigned to protective custody are transported for medical care through the State Classification Committee, which makes arrangements for inmate housing.  Williamson Affidavit, Doc. # 31, at 2.  Warden Williamson explains that, "when a protective custody inmate is transported to a medical appointment, Classification notifies the Unit that the inmate is scheduled to be on the bus for medical transportation on the relevant date, and [unit officials] put him on the bus."  *Id.*  According to Warden Williamson, the Classification officials are "aware and take precautions when a protective classification inmate is transported[.]"  *Id.*  The prison lacks sufficient resources, however, to transport all protective

custody inmates individually to medical appointments, as Watson has requested in this lawsuit. *Id.*

Watson does not allege facts showing that prison officials were deliberately indifferent to his health or safety in November of 2005, during his transport or his housing at the Estelle Unit medical facility. An investigation of the alleged incident acknowledged that Watson was escorted through an area at the Estelle Unit medical facility that was not properly secured and that, contrary to proper procedures, Watson was transported with a confirmed gang member during his return to the Goree Unit. *See* Summary Judgment Motion, Doc. # 30, Exhibit C at 14, Offender Protection Investigation Summary. Watson concedes that he was not actually harmed during his visit to the Estelle Unit or during his return trip to the Goree Unit. Moreover, he does not allege that officials intentionally transported him incorrectly, in violation of prison policy, under conditions that placed him at risk.

Watson's allegations are insufficient to state a claim in this instance. The record shows, at most, an isolated failure by prison officials to transport Watson properly in compliance with prison policy. As the defendants correctly note, violations of the TDCJ policy do not, standing alone, demonstrate a constitutional violation. *See Stanley v. Foster*, 464 F.3d 565, 569 (5th Cir. 2006) (citing *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996)). To the extent Watson claims that officials failed to protect him properly, he must show that he has been incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. *See Farmer*,

511 U.S. at 834; *Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995). Watson does not

allege that prison officials deliberately disregarded a known risk of harm. Rather, it appears

that the policy violation occurred as the result of negligence. Only deliberate indifference

will suffice to state a failure-to-protect claim; mere negligence is not sufficient. *See Farmer*,

511 U.S. at 837; *see also Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990) (holding that a

negligent failure to protect from harm does not make a claim under 42 U.S.C. § 1983).

Watson concedes that he was not harmed during his stay at the Estelle Unit medical

facility or his return to the Goree Unit in November of 2005. Watson further fails to show

that the transportation policy in place is insufficient to protect him from harm in the future.

Watson, who seeks an injunction requiring prison officials to transport him in a van by

himself to all future medical appointments, does not show that such relief is warranted under

the circumstances. In that regard, Watson's speculation that he could be subjected to harm

in the future does not entitle him to injunctive relief. *See City of Lost Angeles v. Lyons*, 461

U.S. 95, 102 (1983) (observing that "past exposure to illegal conduct does not itself show a

present case or controversy regarding injunctive relief . . . if unaccompanied by any

continuing, present adverse effects") (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495-96

(1974); *see also Kirby v. Johnson*, 243 Fed. App'x 877, 2007 WL 2228616 (5th Cir. 2007)

("Injunctive relief is inappropriate when sought to prevent injury that is speculative at best.")

(citing *Carter v. Orleans Parish Public Schools*, 725 F.2d 261, 263 (5th Cir. 1984)); *Taylor

v. Milton*, 124 Fed. App'x 248, 2005 WL 352637 (5th Cir. 2005) (noting that, where a

prisoner failed to allege any facts that would render the likelihood of a future injury any more

than a remote and speculative possibility, he failed to state a valid Eighth Amendment claim for injunctive relief) (citing *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992)).

Based on this record, Watson fails to demonstrate a valid claim for denial of medical care in violation of the Eighth Amendment. Watson further fails to show that he is entitled to injunctive relief from the transportation policy at issue. Accordingly, the defendants are entitled to summary judgment on this claim.

### D.    Mental Health Evaluations

Watson complains that, while in protective custody, he has been kept in relative isolation without routine examination or interview by mental health professionals. Watson does not allege that he suffers from a mental disorder or that he has been refused psychiatric treatment. Watson complains instead that he should not be charged the $3.00 co-payment that prisoners are typically required to pay for examinations in order to find out whether he needs treatment. Watson maintains that, because of his lengthy stay in protective custody, TDCJ should provide mental health examinations for free.

To prevail, Watson must show that he has been denied medical or psychological care with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. *See Estelle*, 429 U.S. at 104; *Easter*, 467 F.3d at 463. To satisfy the objective component of the deliberate indifference standard, a prisoner must demonstrate that his medical condition is "objectively, sufficiently serious." *Farmer*, 511 U.S. at 834. A serious medical condition is one that has been diagnosed by a physician as mandating treatment or

24

one that is so obvious that even a lay person would perceive the need for a doctor's attention. *See Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (citing *Foelker v. Outagamie County*, 394 F.3d 510, 512-13 (7th Cir. 2005)).

In this instance, Watson does not allege that he has been denied mental health evaluations outright. Rather, he claims that he has been denied mental health care free of charge because he is required to contribute a $3.00 co-payment. The co-payment requirement for prisoners is currently codified at Section 501.063 of the Texas Government Code. Under this policy, an inmate who initiates a visit to a health care provider shall make a co-payment in the amount of $3.00 unless the visit is exempt as defined in the policy. Exemptions are provided for emergency visits, follow-up visits, chronic care visits, screening or evaluations, prenatal care, or visits initiated by TDCJ officials. The policy specifically provides that TDCJ "may not deny an inmate access to health care as a result of a failure or inability to make a co-payment." TEX. GOV'T CODE ANN § 501.063(d). Nothing in Constitution guarantees inmates the right to be entirely free from costs associated with medical treatment. *See Reynolds v. Wagner*, 128 F.3d 166, 175 (3d Cir. 1997) (upholding a prison co-payment policy). Because inmates are not refused medical care if they cannot afford to pay the $3.00 surcharge, imposition of the co-payment does not result in an unconstitutional denial of care. *See Lewis v. Brazzel*, Civil No. 07-1227, 2007 WL 4624017, *5 (W.D. La. Oct. 29, 2007) (collecting cases that uphold prison co-payment or fee-based policies and finding that such policies do not, standing alone, result in the denial of medical care).

The record confirms that Watson's custodial status is reviewed every 180 days by the classification committee. *See* Summary Judgment Motion, Doc. # 30, Exhibit C, Classification Records. Warden Williamson reports that, pursuant to TDCJ policy, Watson is eligible to receive a periodic physical examination, including a psychological assessment, every three years. *See* Williamson Affidavit, Doc. # 31, at 2. Inmates in protective custody have daily access to nurses who make rounds twice a day and can also access mental health care at any time by submitting a written sick call request. *See id.* Watson reports that he is examined on an annual basis and treated for hypertension, but that he has never had a psychiatric evaluation. (Watson Affidavit, Doc. # 32). Watson does not allege that he has requested care for a mental health disorder or that he has been denied an examination; nor does he allege facts showing that he manifests symptoms of a diagnosable psychiatric disease. His pleadings, which reflect that he is intelligent and capable of expressing himself with great detail, do not demonstrate that he labors under a mental illness of any sort. Watson has failed to demonstrate that he suffers from a serious mental or psychiatric disorder or that the defendants were aware of his condition but deliberately indifferent to his plight. Based on this record, there is no showing that Watson has been denied mental health care in deliberate indifference to a serious medical or psychological condition. *See Domino*, 239 F.3d at 755 (citing *Farmer*, 511 U.S. at 837). Therefore, Watson fails to demonstrate a valid claim for denial of mental health care in violation of the Eighth Amendment and he further fails to show that he is entitled to injunctive relief from the co-payment policy at issue. The defendants are entitled to summary judgment on this issue.

### E.      Miscellaneous Conditions

In addition to the foregoing allegations, Watson complains in general that the conditions of his confinement in protective custody as a whole are unconstitutional because, in comparison to inmates in the general population, protective custody inmates have less access to a wide variety of privileges.  According to Watson, protective custody inmates are not allowed to visit the prison commissary, but must order items from their cells.  Watson complains that general population inmates have greater selection when it comes to menu items or food service choices in the chow hall.  Protective custody inmates, by contrast, are served meals in their cells from a limited menu.  In contrast to general population inmates, protective custody inmates have no access to "money-making craft endeavors."  Watson complains further that general population inmates have nicer accommodations for conducting contact visitations with friends and family members.  Watson alleges that general population inmates have more out-of-cell recreation time and religious programming, as well as access to newspapers, magazines, and alcohol or drug treatment programs.  In addition, Watson complains that general population inmates receive ice water during the summer months twice a shift, but that protective custody inmates receive ice water only once a shift.  Watson complains further that inmates confined to protective custody are exposed to a greater range of disciplinary sanctions than others housed in the general population and that protective custody inmates do not have the same opportunity to earn good-time credit.  Watson adds that protective custody inmates are given inadequate or inferior clothing to wear.

Watson's primary argument is that the differences between the conditions of confinement for general population inmates and the restrictions imposed on him because of his status as a protective custody inmate violate the Equal Protection Clause. He argues further that, taken as a whole, the totality of these conditions constitute cruel and unusual punishment in violation of the Eighth Amendment. Both arguments are without merit for reasons discussed separately below.

### 1.    Equal Protection

Watson alleges that, by providing less access to the above-referenced privileges in protective custody than the access enjoyed by general population inmates, prison officials have violated the Fourteenth Amendment Equal Protection Clause. The Equal Protection Clause requires that similarly situated persons be treated alike. *See Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985). To establish an equal protection claim, a plaintiff must demonstrate that (1) the state created two or more classifications of similarly situated prisoners that were treated differently; and (2) the classification had no rational relation to any legitimate governmental objective. *See Johnson v. Rodriguez*, 110 F.3d 299, 306-07 (5th Cir.), *cert. denied*, 522 U.S. 995 (1997).

Watson does not allege or show that he has been treated differently from other similarly situated inmates who have been confined to protective custody for their safety. Accordingly, he does not meet the first criteria for an equal protection violation. Likewise, as noted previously, it is well established that safety and security are legitimate penological objectives. *See Washington*, 494 U.S. at 223. Watson does not demonstrate that his

classification or the attendant restrictions on the conditions of his confinement lack the requisite rational relation to a legitimate governmental objective. Because Watson fails to establish a violation of the Equal Protection Clause, the defendants are entitled to summary judgment on this issue.

### 2. Eighth Amendment

Watson contends further that, by restricting access to the above-referenced privileges in protective custody, prison officials have violated the Eighth Amendment to the United States Constitution. As noted above, Watson does not challenge the decision to place him in protective custody and he does not dispute that he is properly classified as such because of threats that have been made against his life. Rather, Watson complains that the conditions of his confinement in protective custody, as a whole, fail to provide the same level of relative freedom from restriction as the conditions found in the general population. The defendants maintain that Watson has failed to demonstrate a constitutional violation under the Eighth Amendment or to show that he is entitled to an injunction from the application of the restrictive policies in place to safeguard protective custody inmates.

It is well settled that the United States Constitution does not require comfortable prisons. *See Farmer*, 511 U.S. at 832; *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). However, it is equally well established that conditions of confinement "must not involve the wanton and unnecessary infliction of pain." *Rhodes*, 452 U.S. at 347. In that respect, the Eighth Amendment's prohibition against cruel and unusual punishment does require that prisoners be afforded "humane conditions of confinement," including adequate food, shelter,

clothing, and medical care.  *Farmer*, 511 U.S. at 832.  Thus, to demonstrate that prison

conditions violate the Eighth Amendment, an inmate must meet the following requirements:

(1) an objective requirement showing that the condition is "so serious as to 'deprive prisoners

of the minimal civilized measure of life's necessities,' as when it denies the prisoner some

basic human need;" and (2) a subjective requirement, which mandates a showing that prison

officials have been "'deliberately indifferent' to inmate health or safety." *Woods v. Edwards*,

51 F.3d 577, 581 (5th Cir. 1995) (citing *Farmer*, 511 U.S. at 834) (citations omitted).

The Court notes that Watson, who casts his claim as one for a violation of the Eighth

Amendment, alleges no physical injury or harm in connection with the alleged restrictions

on the conditions of his confinement.  Watson's failure to allege a violation that has resulted

in actual harm, or one that is likely to cause actual harm, is fatal to his quest for an injunction

under the Eighth Amendment.  In that respect, to survive summary judgment an inmate

seeking an injunction "must come forward with evidence from which it can be inferred that

the defendant-officials were at the time suit was filed, and are at the time of summary

judgment, knowingly and unreasonably disregarding an objectively intolerable risk of harm,

and that they will continue to do so; and finally to establish eligibility for an injunction, the

inmate must demonstrate the continuance of that disregard during the remainder of the

litigation and into the future." *Farmer*, 511 U.S. at 846.  A reviewing court may only grant

appropriate injunctive relief if it finds that the Eighth Amendment's subjective and objective

requirements are satisfied.  *See id.* (citing *Hutto v. Finney*, 437 U.S. 678, 685-688 & n.9

(1978) (upholding order designed to halt "an ongoing violation" in prison conditions that

included extreme overcrowding, rampant violence, insufficient food, and unsanitary conditions)).

Watson does not establish that he is entitled to an injunction here because his allegations fail to satisfy the objective criteria under the Eighth Amendment analysis.  Under this criteria, "extreme deprivations are required to make out a conditions-of-confinement claim."  *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)).  Although the conditions of confinement in protective custody may be more restrictive than those afforded to inmates in the general population, Watson does not allege that he has suffered an extreme deprivation of the "minimal civilized measure of life's necessities."  *Davis*, 157 F.3d at 1005 (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).  Nor does he claim to have been completely denied a basic human need.  *See Woods*, 51 F.3d at 581 (noting that, although the temperature was "uncomfortable" and the conditions were "nauseous," there was no complete "deprivation of facilities for elementary sanitation" giving rise to unconstitutional confinement); *cf. Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 2000) (concluding that complete deprivation of toilets denied a basic element of hygiene in violation of the Eighth Amendment, as did prolonged exposure to "extreme cold" out-of-doors without shelter).

Taken separately or as a whole, the complained of conditions of confinement at issue in this case do not entail the wanton and unnecessary infliction of pain and therefore do not rise to the level of cruel and unusual punishment.  *See Rhodes*, 452 U.S. at 347; *see also Estelle*, 429 U.S. at 104 ("Punishment rises to the level of cruel and unusual only if it

involves an "'unnecessary and wanton infliction of pain.'") (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)).  Watson fails to allege or show that he has been exposed to any condition so grave that it "violates contemporary standards of decency to expose anyone unwillingly to such a risk." *Helling v. McKinney*, 509 U.S. 25, 36 (1993). Thus, Watson's claim that the conditions of his confinement in protective custody constitute cruel and unusual punishment is therefore without merit.  *See Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (holding that a prisoner's Eighth Amendment claim regarding certain restrictions imposed in administrative segregation was frivolous), *cert. denied*, 527 U.S. 1041 (1999).

Moreover, Watson concedes that the restrictions imposed on the conditions of confinement are in place because of his status as an inmate in need of protective custody. A prison regulation that impinges on an inmate's constitutional rights is valid if it is reasonably related to legitimate penological interests.  *See Turner*, 482 U.S. at 89.  The Supreme Court has established the following four factors to consider in this analysis:  (1) whether a valid and rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) the impact of the accommodation on prison guards, other inmates, and the allocation of prison resources generally; and (4) whether there are "ready alternatives" to the regulation in question.  *See id.* at 89-90; *see also Beard*, — U.S. —, 126 S. Ct. at 2578 (reciting the *Turner* factors).  In conducting this inquiry, the Court may not hamper the ability of prison officials "to anticipate security problems and to adopt innovative solutions to the intractable problems of prison

32

administration" by subjecting the day-to-day judgments of prison officials to intrusive second-guessing. *Talib v. Gilley*, 138 F.3d 211, 215 (5th Cir. 1998) (quoting *Turner*, 482 U.S. at 89). Courts are required to accord the widest possible deference in the application of policies and practices designed to maintain security and preserve internal order. *See Pell*, 417 U.S. at 827; *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). The burden is not on the State to prove the validity of prison regulations, but on the prisoner to disprove it. *See Overton*, 539 U.S. at 132 (citations omitted).

The defendants note that the restrictions imposed on inmates assigned to protective custody are in place to keep them safe from harm. Warden Williamson explains that Watson and other inmates confined to protective custody are not allowed to participate in group activities, such as religious services and "alcoholic treatment programs" because security issues preclude their interaction with other members of the inmate population. Williamson Affidavit, at 2. Warden Williamson notes that, because Watson's life could be in danger, "[i]t would be a significant burden on TDCJ to escort and monitor Offender Watson and other protective custody inmates to and from group services, and it would expose them and others to serious risk by providing other inmates access to them." *Id*. Warden Williamson explains further that alternatives are available for inmates confined to protective custody and that efforts are made to allow access to a chaplain or religious volunteers, individual counseling for alcoholic dependency, periodicals and newspapers from the library, recreation time, and other provisions, such as ice water during the summer months. *See id*. at 2-3.

While the conditions of Watson's confinement are more restrictive than those found in the general population, he does not demonstrate that the restrictions are unreasonable or unrelated to the important penological interests of safety and security. "[P]rison officials are not required to adopt the policy 'least restrictive' of prisoners' rights, so long as the policy itself is reasonable." *Talib*, 138 F.3d at 215 n. 4; *see also Chavarria v. Stacks*, 102 Fed. App'x 433 (5th Cir. 2004) (holding that a prison policy requiring 24-hour illumination of cells in administrative segregation, which allegedly caused an inmate to suffer sleep deprivation, did not violate the Eighth Amendment). Thus, Watson fails to meet his burden to show that any of the challenged policies are invalid for lack of a rational relationship to legitimate objectives. *See Overton*, 539 U.S. at 132.

Watson further fails to show that the other factors identified by the Supreme Court warrant relief in his favor. *See Turner*, 482 U.S. at 89-90. As the defendants note, prison officials have attempted to lessen the restrictions imposed on inmates in protective custody by providing certain privileges and services to them individually in their cells. Watson complains that many of the alternative means provided for exercising his rights are insufficient. While Watson deems the alternative means inadequate, he does not propose any ready alternatives to the restrictions in question. To the extent that alternative means are not available, Watson further fails to show that exempting him from the restrictions found in protective custody would not adversely affect prison personnel, other inmates, and the allocation of prison resources generally, as well as his own safety. For all of these reasons,

Watson fails to show that he is entitled to injunctive relief.[7]  *See Baranowski v. Hart*, 486 F.3d 112, 120 (5th Cir. 2007) (outlining the factors found in *Turner* and finding that, where the policies at issue were logically connected to legitimate penological concerns of security, staff, and space limitations, TDCJ was not required to accommodate every religious holiday and requirement of the Jewish faith).

In conclusion, absent a persuasive showing that he is entitled to prevail on the merits of his claims, Watson fails to satisfy the first requirement for an injunction.  Watson further fails to show that he meets any of the other requirements for an injunction in this instance under the governing legal standard or the PLRA.  Because Watson's claims fail as a matter of law, the defendants are entitled to summary judgment and the complaint must be dismissed.

---

[7]    Many of Watson's allegations are clearly premised on speculation of future harm, making injunctive relief inappropriate. *See Lyons*, 461 U.S. at 102.  For example, Watson complains that prisoners in protective custody face disciplinary sanctions that are more stringent than those in general population.  Watson concedes, however, that he is not currently facing any disciplinary proceedings and that he has not had any disciplinary charges since 2004.  Other allegations by Watson, such as his complaint that prisoners in protective custody do not earn good-time credits, simply fail to state a claim.  In that regard, the loss of opportunity to earn good-time credits does not constitute a constitutionally cognizable injury in Texas. *See Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995).

## IV.   CONCLUSION AND ORDER

Based on the foregoing analysis, the Court concludes that Watson has failed to establish a valid claim under 42 U.S.C. § 1983 and that the defendants are entitled to summary judgment.

Accordingly, the Court **ORDERS** as follows:

1.      The defendants' motion for summary judgment (Doc. # 30) is **GRANTED**.

2.      The defendants' motion to amend or supplement the record with Warden Williamson's affidavit (Doc. # 33) is **GRANTED**.

3.      The complaint is **DISMISSED** with prejudice.

The Clerk will provide a copy of this order to the parties.

SIGNED at Houston, Texas on February 27th, 2008.


Nancy F. Atlas
United States District Judge